UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ANGELA RASCOE,          )
                        )
          Plaintiff,     )
      v.                 )         CIVIL ACTION
                        )         NO. 13-11813-JGD
COMMISSIONER OF      )
SOCIAL SECURITY,      )
                        )
          Defendant.    )

## MEMORANDUM OF DECISION AND ORDER
## ON CROSS-MOTIONS REGARDING DENIAL OF
## SOCIAL SECURITY DISABILITY INSURANCE BENEFITS

May 7, 2015

DEIN, U.S.M.J.

## I. INTRODUCTION

The plaintiff, Angela Rascoe ("Rascoe"), has brought this action pursuant to

section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in order to challenge the

final decision of the Commissioner of the Social Security Administration (the

"Commissioner") denying Rascoe's claim for Social Security Disability Insurance

("SSDI") benefits.  The Commissioner had found that the plaintiff was disabled as of

January 1, 2010 due to a major depressive disorder, and had granted the plaintiff's

application for Supplemental Security Income ("SSI") benefits.  However, following a

hearing, an Administrative Law Judge ("ALJ") determined that the plaintiff's

impairments were not severe on or prior to March 31, 2009, the date when Rascoe was

last insured for purposes of her claim for SSDI.  Based on the ALJ's decision, the

Commissioner concluded that Rascoe was not disabled during the relevant time period,

and denied her application for such benefits.  By her Complaint in this action, Rascoe is

seeking judicial review of that decision.

The matter is presently before the court on the plaintiff's "Motion to Reverse"

(Docket No. 24) by which the plaintiff is seeking an order vacating the Commissioner's

decision, and remanding the matter to the Social Security Administration for further

administrative proceedings.  It is also before the court on the "Defendant's Motion for

Order Affirming the Decision of the Commissioner" (Docket No. 28), by which the

Commissioner is seeking an order upholding her decision to deny Rascoe's claim for

SSDI benefits.  At issue is whether the ALJ, in reaching his decision that Rascoe was not

disabled through her date last insured, erred by finding that Rascoe's mental and physical

impairments were not "severe" at step two of the sequential evaluation process, and by

failing to apply the procedures set forth in Social Security Ruling ("SSR") 83-20 in order

to determine the precise date when Rascoe's mental disability began.  For all the reasons

detailed herein, this court finds that the ALJ erred by failing to comply with the mandate

of SSR 83-20, which required the ALJ to establish the onset date of Rascoe's major

depressive disorder in consultation with a medical advisor.  This court also finds that the

ALJ failed to present an adequate justification for rejecting the opinion of the plaintiff's

treating physician regarding the extent to which the plaintiff's physical impairments

limited her ability to perform work-related activities during the insured period.  Accord-

ingly, the Commissioner's motion to affirm is DENIED, the plaintiff's motion to reverse is ALLOWED, and the matter is remanded to the Social Security Administration for further administrative proceedings consistent with this opinion.

## II. <u>STATEMENT OF FACTS</u>[1]

Rascoe was born on June 9, 1967, and was 45 years old at the time of her hearing before the ALJ. (Tr. 26, 80). She is a high school graduate, has three grown children, and has held jobs as a secretary, a nanny, a personal care attendant, and a counselor. (Tr. 26, 32, 117, 201, 216-17). Rascoe's earnings records show that she maintained some form of employment for approximately 20 years, and that at one point, in 2002, she earned over $70,000 in income. (Tr. 91). However, with the exception of a three-month period in 2008, when Rascoe attempted to return to work as a receptionist at a spa, the plaintiff has remained unemployed since 2005, the year her maternal grandmother passed away. (<u>See</u> Tr. 27, 89, 91).

The record indicates that Rascoe's grandmother served as her primary caretaker throughout her childhood, and remained an integral part of her adult life. (Tr. 223). It also indicates that Rascoe was present when her grandmother suffered the stroke that led to her death in 2005. (<u>Id.</u>). According to Rascoe, she felt as if her "whole world crashed" when her grandmother died. (Tr. 27). This is consistent with medical records showing that the plaintiff was diagnosed with a major depressive disorder in April 2006.

---

[1] References to pages in the transcript of the record proceedings shall be cited as "Tr.__." The ALJ's Decision shall be cited as "Dec." and can be found beginning at Tr. 12.

(Tr. 238, 249, 258).  It is also consistent with Rascoe's reports that she began hearing voices and experiencing visual hallucinations soon after her grandmother's death.  (See Tr. 216, 247).

The plaintiff continued to live in her grandmother's house until 2009 when she moved to Boston.  (Tr. 217).  In 2010, she was again diagnosed with a major depressive disorder, "recurrent severe," with psychotic features, along with chronic pain and post-traumatic stress disorder.  (Tr. 226).  By 2011, she had also been diagnosed with dissociative identity disorder.  (Tr. 210).  Rascoe claims that she became disabled from working beginning on March 1, 2009, due to symptoms resulting from her major depressive disorder, chronic pain syndrome and/or fibromyalgia.  (Tr. 39; Pl. Mot. (Docket No. 24) at 1).

## Procedural History

On August 30 and 31, 2010, Rascoe filed applications for SSI and SSDI, claiming that she had become disabled and incapable of working since December 1, 2006.  (Tr. 41-42, 80).  She later amended the alleged date of onset of her disability to March 1, 2009. (Tr. 39).  The Social Security Administration determined that Rascoe was disabled as of January 1, 2010 due to her mental impairments.  (Tr. 42).  Accordingly, the agency granted her application for SSI.  In order to qualify for SSDI, however, Rascoe had to establish that she was disabled on or before March 31, 2009, the last date on which she was insured by the program.  (Dec. 3; Tr. 14; see also 20 C.F.R. § 404.131).  Because the agency determined that she did not become disabled until January 2010, her application

-4-

for SSDI was denied.  (<u>See</u> Tr. 41, 44).  It was denied again, upon reconsideration, on June 24, 2011.  (Tr. 43).

The plaintiff requested and was granted a hearing before an ALJ, which took place on June 15, 2012.  (Tr. 23-40, 51).  Rascoe, who was represented by counsel, appeared and testified at the hearing.  (Tr. 23-39).  No other witnesses appeared, and no experts were called to testify.  (<u>See</u> Tr. 23-40).  On June 26, 2012, the ALJ issued a decision denying the plaintiff's application for SSDI benefits.  (Tr. 9-18).  Rascoe then filed a request for review of the ALJ's decision by the Social Security Appeals Council.  (Tr. 8).  On June 10, 2013, the Appeals Council denied the plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.  (Tr. 1-4).  Thus, the plaintiff has exhausted all of her administrative remedies, and the case is ripe for review by this court pursuant to 42 U.S.C. § 405(g).

### The ALJ's Decision

As described above, in order to qualify for SSDI benefits, Rascoe had to establish that she was disabled prior to the expiration of her insured status on March 31, 2009.  The ALJ concluded that from March 1, 2009, the alleged onset date, to March 31, 2009, the date when Rascoe was last insured, the plaintiff "was not under a disability within the meaning of the Social Security Act[,]" which defines "[d]isability" as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not

less than 12 months."  (Dec. 1; Tr. 12).  <u>See also</u> 42 U.S.C. § 423(d)(1)(A).  There is no

dispute that the ALJ, in reaching his decision that Rascoe was not disabled through her

date last insured, applied the five-step sequential evaluation required by 20 C.F.R.

§ 404.1520.  The procedure resulted in the following analysis, which is detailed in the

ALJ's "Findings of Fact and Conclusions of Law."  (<u>See</u> Dec. 3-6; Tr. 14-17).

The first inquiry in the five-step evaluation process is whether the claimant is

"engaged in substantial gainful work activity[.]"  <u>Seavey v. Barnhart</u>, 276 F.3d 1, 5 (1st

Cir. 2001).  If so, the claimant is automatically considered not disabled and the applica-

tion for benefits is denied.  <u>See id.</u>  In this case, the ALJ determined that Rascoe did not

engage in substantial gainful work activity during the period from March 1, 2009, the

alleged onset date of her disability, through her last insured date of March 31, 2009.

(Dec. Finding #2; Tr. 14).  Therefore, the ALJ proceeded to the second step in the

sequential analysis.

The second inquiry is whether the claimant has a "severe impairment," meaning an

"impairment or combination of impairments which significantly limits [her] physical or

mental ability to do basic work activities[.]"  20 C.F.R. § 404.1520(c).  If not, the

claimant is considered not disabled and the application for benefits is denied.  <u>See</u>

<u>Seavey</u>, 276 F.3d at 5.  Here, the ALJ determined that Rascoe's medical records, and the

opinion of her treating physician regarding the extent of her physical limitations, did not

substantiate her claim that she was impaired as a result of chronic pain and/or fibromyal-

gia through the date when she was last insured.  (<u>See</u> Dec. 3-4; Tr. 14-15).  Accordingly,

he found that she did not have a medically determinable physical impairment for purposes of the disability analysis.

The ALJ did find that Rascoe had a history of major depressive disorder during the relevant time period. (Finding #3; Tr. 14). However, after considering her symptoms and "the extent to which [those] symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence," including the available opinion evidence, the ALJ determined that Rascoe's mental impairment did not significantly limit her ability to perform basic work-related activities. (Dec. 4-5; Tr. 15-16). Consequently, he concluded that Rascoe did not have an impairment, or combination of impairments, that were severe within the meaning of the social security regulations, and that she "was not under a disability, as defined in the Social Security Act, at any time from March 1, 2009, the amended alleged onset date, through March 31, 2009, the date last insured[.]" (Finding #4 & #5; Tr. 16-17). As detailed more fully below, the plaintiff contends that the ALJ erred by finding that her mental and physical impairments were not severe, and by failing to apply SSR 83-20 to infer the onset date of her major depressive disorder.

Because the ALJ found that Rascoe was not suffering from a severe impairment, and was therefore not disabled through the date when she was last insured, there was no need to reach the remaining steps of the disability analysis. Accordingly, he had no occasion to consider whether Rascoe had an impairment that met the conditions for one of the "listed" impairments set forth in the Social Security regulations or whether her "residual functional capacity" was such that she could still perform her past relevant

work.  See Seavey, 276 F.3d at 5.  Nor did he reach the question whether, given her

residual functional capacity, education, work experience, and age, Rascoe was able to

perform other work.  See id.  The plaintiff argues that it was improper for the ALJ to

terminate his analysis at step two, and that the matter should be remanded for further

administrative proceedings.

Additional factual details relevant to this court's analysis are set forth below where

appropriate.

### III.  ANALYSIS

### A.  Standard of Review

By her complaint, Rascoe is seeking judicial review of the Commissioner's "final

decision" pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (the

"Act").  Section 205(g) of the Act provides in relevant part as follows:

> Any individual, after any final decision of the Commissioner of
> Social Security made after a hearing to which he was a party,
> irrespective of the amount in controversy, may obtain a review of
> such decision by a civil action .... The court shall have power to
> enter, upon the pleadings and transcript of the record, a judgment
> affirming, modifying, or reversing the decision of the Commissioner
> of Social Security, with or without remanding the cause for a re-
> hearing.  The findings of the Commissioner of Social Security as to
> any fact, if supported by *substantial evidence*, shall be conclusive ....

42 U.S.C. § 405(g) (emphasis added).  The Supreme Court has defined "substantial

evidence" to mean "more than a mere scintilla.  It means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."  Richardson v.

Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting

Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126

(1938)); accord Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st

Cir. 1991).

As the First Circuit has explained,

> In reviewing the record for substantial evidence, we are to keep in
> mind that "issues of credibility and the drawing of permissible
> inference from evidentiary facts are the prime responsibility of the
> [Commissioner]." The [Commissioner] may (and, under [her]
> regulations, must) take medical evidence. But the resolution of
> conflicts in the evidence and the determination of the ultimate
> question of disability is for [her], not for the doctors or for the
> courts. We must uphold the [Commissioner's] findings in this case
> if a reasonable mind, reviewing the record as a whole, could accept
> it as adequate to support [her] conclusion.

Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981) (quoting

Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

Therefore, "the court's function is a narrow one limited to determining whether there is

substantial evidence to support the [Commissioner's] findings and whether the decision

conformed to statutory requirements." Geoffroy v. Sec'y of Health & Human Servs., 663

F.2d 315, 319 (1st Cir. 1981). The Commissioner's decision must be affirmed, "even if

the record arguably could justify a different conclusion, so long as it is supported by

substantial evidence." Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1,

3 (1st Cir. 1987).

"Even in the presence of substantial evidence, however, the Court may review

conclusions of law, and invalidate findings of fact that are 'derived by ignoring evidence,

misapplying the law, or judging matters entrusted to experts[.]'" <u>Musto v. Halter</u>, 135 F. Supp. 2d 220, 225 (D. Mass. 2001) (quoting <u>Nguyen v. Chater</u>, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam)) (internal citations omitted). "Thus, if the ALJ made a legal or factual error, the court may reverse or remand such decision to consider new, material evidence or to apply the correct legal standard." <u>Ross v. Astrue</u>, Civil Action No. 09-11392-DJC, 2011 WL 2110217, at *2 (D. Mass. May 26, 2011) (internal citation omitted).

### B.    <u>Failure to Comply with SSR 83-20</u>

Rascoe's principal argument on appeal is that the ALJ failed to apply SSR 83-20 to determine the onset date of her disabling mental impairment. (<u>See</u> Pl. Mot. at 6-9; Pl. Reply Mem. (Docket No. 31) at 1-5). She contends that the ALJ's failure to comply with the Ruling's requirements, before assessing the severity of her major depressive disorder, warrants a remand of the matter to the Commissioner with instructions to infer an onset date in consultation with a medical advisor. (<u>See</u> Pl. Mem. at 9). For the reasons that follow, this court agrees that the ALJ was not at liberty to ignore the mandate of SSR 83-20, and that Rascoe's motion to reverse must be allowed on this basis.

### <u>The Requirements of SSR 83-20</u>

SSR 83-20, like all other Social Security Rulings, "is 'binding on all components of the Social Security Administration,' including ALJs[.]" <u>Blea v. Barnhart</u>, 466 F.3d 903, 909 (10th Cir. 2006) (quoting 20 C.F.R. § 402.35(b)(1)). It provides that in cases such as this one, where the Commissioner has determined that the claimant is disabled, "the decisionmaker must also establish the onset date of disability." SSR 83-20, 1983

WL 31249, at *1 (S.S.A. 1983). This is because "the onset date is [often] critical; it may affect the period for which the individual can be paid and may even be determinative of whether the individual is entitled to or eligible for any benefits." Id. Accordingly, under SSR 83-20, "it is essential that the onset date be correctly established and supported by the evidence . . . ." Id.

In order to establish a disability onset date under SSR 83-20, the ALJ must first determine "whether the alleged impairment is of traumatic or non-traumatic origin." Mason v. Apfel, 2 F. Supp. 2d 142, 146 (D. Mass. 1998). In cases where the impairment at issue "is of traumatic origin, the date of onset is self-evident." Id. However, in cases involving an impairment of non-traumatic origin, the determination of onset requires consideration of three relevant factors, including "the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity." SSR 83-20, 1983 WL 31249, at *2. Here, Rascoe has not pointed to a single traumatic event that would have rendered the onset of her mental disability self-evident as of March 1, 2009, the date on which she claims that her disability began. Therefore, the ALJ was required to determine an onset date based on the three factors set forth in SSR 83-20. See Larkin v. Comm'r of Soc. Sec., C.A. No. 2:10-CV-291, 2011 WL 4499296, at *4 (D. Vt. Sept. 27, 2011) (unpub. op.) (explaining that non-traumatic injuries, such as plaintiff's mental impairment, require determination of onset based on "consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity" (quoting SSR 83-20, 1983 WL 31249, at *1)).

When considering the relevant factors, the claimant's allegation as to when disability began constitutes "[t]he starting point in determining the date of onset of disability[.]" SSR 83-20, 1983 WL 31249, at *2. The date the claimant stopped working also is often "of great significance" in the ALJ's analysis. Id. "These two factors are significant, however, only to the extent that they are 'consistent with the severity of the condition[s] shown by the medical evidence,' which 'serves as the primary element in the onset determination.'" Wilson v. Colvin, 17 F. Supp. 3d 128, 138 (D.N.H. 2014) (quoting SSR 83-20, 1983 WL 31249, at *1-2). Pursuant to SSR 83-20, the selection of an onset date "can never be inconsistent with the medical evidence of record." 1983 WL 31249, at *3.

On the other hand, the Ruling recognizes that it may not be possible to obtain medical evidence that would enable an ALJ to determine the precise date of onset, and that the claimant's impairment may have become disabling before she was diagnosed or even received any treatment. See SSR 83-20, 1983 WL 31249, at *3; Mason, 2 F. Supp. 2d at 149 ("[T]he fact that [P]laintiff was not treated for h[er] symptoms until long after the symptoms first appeared does not preclude the possibility that [P]laintiff became disabled before [s]he received treatment" (alterations in original; quotations and citations omitted)). In such cases, SSR 83-20 directs the ALJ to infer an onset date based on the medical and other evidence of record. As SSR 83-20 explains in relevant part:

> With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly

difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.

1983 WL 31249, at *2.

In cases where an onset date must be inferred, SSR 83-20 sets forth certain steps that the ALJ should follow:

> First, "[i]f there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made." [SSR 83-20, 1983 WL 31249,] at *3. Second, "[i]f reasonable inferences about the progression of the impairment cannot be made on the basis of the evidence in [the] file and additional relevant medical evidence is not available, it may be necessary to explore other sources of documentation. Information may be obtained ... from family members, friends, and former employers to ascertain why medical evidence is not available for the pertinent period and to furnish additional evidence regarding the course of the individual's condition. *Id.* Third, if an ALJ lacks "a legitimate medical basis" to identify a particular onset date because the evidence regarding onset is ambiguous, he or she "should call on the services of a medical advisor" to assist in inferring an onset date that is supported by a "[c]onvincing rationale." *Id.*

Wilson, 17 F. Supp. 3d at 138-39 (footnotes omitted). This court finds that the ALJ's failure to employ these procedures in Rascoe's case was legally erroneous.

## **Failure to Apply SSR 83-20**

In connection with his finding that Rascoe's impairment was not severe, and therefore not disabling at any time through March 31, 2009, the ALJ in the instant case first considered the plaintiff's allegations of disabling symptoms, and the extent to which

her medically determinable impairment could reasonably have been expected to produce the alleged symptoms during the relevant time period. (Dec. 4-5; Tr. 15-16). Accordingly, the ALJ considered Rascoe's assertion that she suffered from widespread pain that limited her ability to lift, stand, walk and kneel. (Dec. 5; Tr. 16). He also considered her claim that she had difficulty caring for herself and carrying out daily tasks, as well as her claim that she suffered from disturbed sleep, hallucinations, and other symptoms of depression that adversely impacted her memory, concentration and ability to interact with others. (Id.). The ALJ found that the plaintiff's depressive disorder could reasonably have been expected to cause some of the alleged symptoms through her date last insured. (Id.). However, he further determined, without addressing SSR 83-20 or the requirements set forth therein, that Rascoe's subjective statements regarding the extent of her symptoms were "not credible to the extent they are inconsistent with finding that the claimant had no severe impairment or combination of impairments through the date last insured[.]" (Id.).

The ALJ went on to describe, again without mention of SSR 83-20, the basis for his conclusion that Rascoe's complaints concerning the extent of her symptoms were not entirely credible. He indicated, as an initial matter, that he had placed substantial weight on the limited evidence of Rascoe's mental health treatment during the relevant time period. Thus, while the ALJ acknowledged that Rascoe had been diagnosed with a major depressive disorder in 2006, he found it significant that "the medical record contains very limited mental health treatment and objective findings through the date last insured."

-14-

(Id.).  In particular, he found that the plaintiff had only received mental health treatment on two occasions, in April 2006, prior to the expiration of her insured status, and that the record revealed "no further mental health treatment until 2010, well after the date last insured."  (Id.; see also Dec. 6; Tr. 17).  As described below, however, the absence of treatment for Rascoe's mental impairments was insufficient to justify the ALJ's decision in this case or to excuse his failure to comply with the procedures required under SSR 83-20.

The ALJ considered the medical records and other evidence that was available through the plaintiff's date last insured, and found that such evidence undermined her claim of disabling symptoms during the relevant time period.  For example, the ALJ determined that Rascoe's allegation that she was suffering from a disabling impairment was inconsistent with evidence that she reported having "normal energy" during a visit to her health care provider in 2007, and with her effort to return to work as a receptionist in 2008.  (Dec. 5; Tr. 16; see also Tr. 89, 444).  He further noted that in April 2010, Rascoe informed her health care provider that she had been experiencing symptoms of depression for about two months, which would have been well after the date when the plaintiff was last insured.  (Dec. 5; Tr. 16; see also Tr. 272).  However, under SSR 83-20, the issue is not whether the ALJ's decision is reasonable.  Rather, the issue is whether the onset of the claimant's disability is ambiguous.  See Blea, 466 F.3d at 911-12 (rejecting Commissioner's argument that substantial evidence supported ALJ's decision at step five of the disability analysis, and explaining that "the issue of whether the ALJ erred by

failing to call a medical advisor turns on whether the evidence concerning the onset of [the plaintiff's] disabilities was ambiguous").  Here, the ALJ failed to consider evidence, which is described in detail below, that rendered the onset date of Rascoe's mental disability ambiguous, and therefore required the ALJ to obtain the services of a medical advisor.

Because he determined that the plaintiff had a medically determinable mental impairment, the ALJ considered the four broad functional areas, known as the "paragraph B" criteria, which are set forth in the regulations pertaining to mental disorders.  (See Dec. 5-6; Tr. 16-17).  The ALJ determined that Rascoe had no more than "mild" limitations in her ability to carry out activities of daily living, social functioning and ability to maintain concentration, persistence, or pace during the relevant time period. (Id.).  He also noted that there was no evidence showing that Rascoe experienced any episodes of decompensation, which lasted for an extended duration, through the date when she was last insured.  (Dec. 6; Tr. 17).  The ALJ relied on these findings to support his conclusion that Rascoe's mental impairment was not severe through March 31, 2009. (See id.).  Again, however, the ALJ failed to apply the procedures required under SSR 83-20.

In his written decision, the ALJ did acknowledge Rascoe's argument, which was raised by her counsel at the hearing, that the onset of her mental disability before the date last insured could be inferred from the record.  (Dec. 5; Tr. 16).  However, he rejected

this argument, and found that no such inference could be made based on the objective

medical evidence. (Id.). As the ALJ reasoned,

> the claimant's attorney alleges that onset before the date last insured can be inferred from the record .... However, the undersigned finds that the limited objective medical evidence through the date last insured, discussed above, showing only two episodes of mental health treatment way back in 2006, as well as the claimant's own reports of good energy and returning to work before the date last insured and of only experiencing symptoms for two months as of April 2010 do not support such inference.

(Id.).

In reaching his conclusion that no such inference could be made, the ALJ made no

attempt to comply with the requirements of SSR 83-20. Thus, the ALJ did not consider

whether the plaintiff's alleged onset date of March 1, 2009 was supported by any medical

or other evidence contained in the administrative record. (See id.). Nor did he address

the plaintiff's work history or the fact that she stopped working in 2005, the same year as

her grandmother's death. (See id.). In addition, the ALJ did not evaluate whether

Rascoe's report that she began to hear voices and experience visual hallucinations shortly

after her grandmother's passing was consistent with the onset of a disabling mental condi-

tion. (See id.; see also Tr. 216, 247). As described above, the date when a claimant

stops working is often considered a matter "of great significance" under SSR 83-20.

1983 WL 31249, at *2. The ALJ was not free to ignore the circumstances that were

occurring in Rascoe's personal life at the time she stopped working, or to refrain from

considering whether they may have triggered the onset of her disability. See Larkin, 2011

WL 4499296, at *6 (finding that non-medical evidence, including claimant's failure to graduate high school, difficulty maintaining a job, and reports of abusive childhood, supported inference of onset date during the period in which she was insured for purposes of SSDI benefits).

The ALJ's focus on the absence of mental health treatment from the relevant time time period was also inappropriate. As SSR 83-20 recognizes, it is sometimes impossible, in the case of slowly progressive impairments, "to obtain medical evidence establishing the precise date an impairment became disabling." 1983 WL 31249, at *2. Under such circumstances, the ALJ must "infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process." Id. The absence of contemporaneous medical evidence alone was not sufficient to support the ALJ's conclusion that no onset before the date last insured could be inferred. See Wilson, 17 F. Supp. 3d at 139 (finding that ALJ erred as a matter of law where she discounted claimant's alleged onset date of disability, and determined, without consulting a medical advisor, that claimant was not disabled as of his date last insured, based "on the fact that the record does not contain any evidence that [the claimant] had sought contemporaneous treatment for the condition that gave rise to his claimed disability").

## Reliance on Opinions of State Agency Consultants

The Commissioner argues that the ALJ's decision was not erroneous because he relied on the opinions of three State agency consultants, Henry Schniewind, M.D., T. Knox, Ph.D., and Myles Friedland, Ph.D., each of whom determined that the onset of

Rascoe's disability did not occur during the period when she was insured for purposes of her claim for SSDI. (Def. Mem. (Docket No. 29) at 10; see also Tr. 17; 321-33, 412-24, 426-27). This court finds that the ALJ's reliance on that evidence was insufficient to satisfy the requirements of SSR 83-20 or to eliminate the need to consult with a medical advisor to establish an appropriate date of onset.

On December 29, 2010, Dr. Schniewind completed a Psychiatric Review Technique Form ("PTRF") based on a review of Rascoe's medical records. (Tr. 321-33). Therein, Dr. Schniewind opined that Rascoe was suffering from a major depressive disorder, and that she met the criteria for affective disorders as set forth in the Listing of Impairments contained in the social security regulations. (Tr. 321, 333). He further opined that the onset of Rascoe's disability could only be inferred back to January 1, 2010 because there was "no information" available to assess the severity of impairment. (Tr. 333). Although he acknowledged that symptoms of Rascoe's depression "first appeared years ago" following the death of the plaintiff's grandmother, he concluded that there was "no evidence" to establish disability through March 31, 2009, the date when Rascoe was last insured. (See id.).

Dr. Knox and Dr. Friedland each expressed a similar opinion. On May 9, 2011, Dr. Knox completed a PRTF in which he concluded that Rascoe's mental impairment met the Listing for affective disorders, but agreed with Dr. Schniewind's assessment regarding the onset date of Rascoe's mental disability. (Tr. 412, 424). As Dr. Knox wrote in his consultant's notes, "I affirm initial medical onset date of 1/1/10." (Tr. 424). He further

wrote that there was "[i]nsufficient evidence" to find disability as of the date when the plaintiff was last insured. (Id.). Dr. Friedland also reviewed Rascoe's medical records, and completed a Medical Consultant's Review of Psychiatric Review Technique Form on June 14, 2011. (Tr. 426-27). Therein, Dr. Friedland indicated that he agreed with the earlier assessments regarding the date of disability onset. (Tr. 426-27). Specifically, Dr. Friedland noted that the earliest medical evidence of record was dated July 7, 2010, and that there was insufficient evidence to support Rascoe's alleged onset date of March 1, 2009. (Tr. 427). Accordingly, he concluded that the onset date of January 1, 2010 was a "reasonable assessment." (Id.).

The ALJ considered these opinions in connection with his analysis of Rascoe's claim for SSDI benefits, and found that they were consistent with the limited evidence reflecting mental health treatment through the date last insured. (See Dec. 6; Tr. 17). He also found that the opinions of the State agency consultants were consistent with Rascoe's report of good energy in 2007 and her effort to return to work in 2008. (Id.). Accordingly, he concluded that they were entitled to "significant weight" at step two in the sequential analysis. (Id.).

The ALJ's reliance on the opinions of the State agency consultants is inadequate to establish compliance with SSR 83-20. As an initial matter, any suggestion that there was no medical evidence by which to infer an onset date during the period in which Rascoe was insured is belied by the administrative record. The record establishes that Rascoe was diagnosed with a major depressive disorder in April 2006. (Tr. 238). It also

indicates that she complained of hearing voices and experiencing visual hallucinations during that same time period. (Tr. 245-47).

In addition, the record indicates that the State agency consultants' assessment of a likely onset date was based on a lack of contemporaneous medical records, and not on facts such as Rascoe's work history or the circumstances that may have given rise to her severe depression. See Plumley v. Astrue, C.A. No. 2:09-CV-42, 2010 WL 520271, at *12 (D. Vt. Feb. 9, 2010) (unpub. op.) (finding that ALJ's reliance on opinions of non-treating, State agency physicians was insufficient to satisfy requirements of SSR 83-20 where "both doctors improperly based their findings on a lack of evidence, rather than attempting to infer an onset date based on the evidence contained in the record"). As described above, the absence of medical evidence during the insured period, "standing alone, is not a sufficient basis to deny benefits" in cases where the claimant has been found to be disabled. Wilson, 17 F. Supp. 3d at 139. Rather, as the court explained in Blea,

> "when there is no contemporaneous medical documentation, we ask whether the evidence is ambiguous regarding the possibility that the onset of [the claimant's] disability occurred before the expiration of her insured status. If the medical evidence is ambiguous and a retroactive inference is necessary, SSR 83-20 requires the ALJ to call upon the services of a medical advisor to insure that the determination of onset is based upon a 'legitimate medical basis.'"

Blea, 466 F.3d at 911 (quoting Grebenick v. Chater, 121 F.3d 1193, 1200-01 (8th Cir. 1997)).

The evidence in the instant case leaves the onset of Rascoe's mental disability ambiguous. As an initial matter, there is nothing in the record to suggest that Rascoe suffered any trauma shortly before January 2010, the date on which the Commissioner found her to be disabled for purposes of SSI benefits. Thus, it is logical to assume that her disability began sometime prior to that date. Moreover, there are no facts that would rule out the possibility that her mental impairment became disabling prior to March 31, 2009. Although the records of Rascoe's mental health treatment through the date last insured are sparse, they establish a history of depression, which increased in severity following the death of the plaintiff's grandmother. (See Tr. 238, 245-47, 249). Furthermore, records relating to Rascoe's mental health treatment after the date last insured confirm that her mental impairments, and associated functional limitations, existed during the period preceding the expiration of her insured status. For example, but without limitation, during a mental health assessment in July 2010, Rascoe reported a history of visual and auditory hallucinations beginning after the death of her grandmother. (Tr. 216, 223). She also reported a family history of mental illness, and stated that she had not "been right" since her grandmother had passed away. (Tr. 218, 223). Mental health records from 2011 similarly indicate that the plaintiff's depression arose around the time of her grandmother's death. (See, e.g., Tr. 210-11). They further reflect a significant decline in functioning, including an inability to work or participate in any structured activity, beginning in 2005 or 2006. (Tr. 211).

Records relating to Rascoe's physical condition also suggest a history of depression involving severe symptoms such as hallucinations and paranoia. For example, but again without limitation, the evidence shows that during a visit with a physician in August 2010, Rascoe reported that she had been experiencing symptoms of mental illness, including sadness, visual and audio hallucinations and paranoia, since 2008, but stated that she had not wanted to start psychiatric medications at that time. (Tr. 288). In March 2011, during a consultation with Robert Saper, M.D. relating to her complaints of pain, the plaintiff reported a history of depression dating back to the death of her grandmother. (Tr. 462). These records too create ambiguity regarding the onset of her disability.

Even if Rascoe's statements to her treatment providers were not enough to create an ambiguity, objective evidence relating to her diagnoses provides support for her claim of disability prior to the date last insured. In particular, the medical records establish that by September 2010, about a year and a half after the expiration of her insured status, Rascoe was diagnosed with post-traumatic stress disorder, major depressive disorder with psychotic features, and dissociative identity disorder. (Tr. 229). She was also assessed as having a global assessment of functioning ("GAF") score of 45, which indicates severe difficulties in functioning. See Amaral v. Comm'r of Soc. Sec., 797 F. Supp. 2d 154, 158 n.1 (D. Mass. 2010) (explaining that "GAF score between 41 and 50 represents [s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable

to keep a job)" (quotations and citation omitted)). "It is self-evident that mental illness usually proceeds along a slow and progressive course." Mason, 2 F. Supp. 2d at 149. Accordingly, this evidence too "should have caused the ALJ to scrutinize the Commissioner's denial of benefits carefully and consult a medical advisor." Id. His failure to do so warrants a remand for further administrative proceedings. Upon remand, the ALJ should consult with a medical advisor to determine the date when Rascoe's mental disability began based on all of the evidence in the record.

### C.    Failure to Find a "Severe" Mental or Physical Impairment

Rascoe contends that the ALJ's decision to terminate the disability analysis at step two in the sequential evaluation suffers from additional flaws as well. In particular, she argues that the ALJ's finding that her mental impairment was not severe as of March 31, 2009 is logically inconsistent with the Commissioner's determination that she was disabled as of January 1, 2010 as a result of her depressive disorder. (Pl. Mot. at 4-5). She also takes issue with the ALJ's finding that she was not suffering from a severe physical impairment as of the date last insured, and asserts that his decision in that respect was not supported by substantial evidence in the record. (Id. at 5). For the reasons that follow, this court is not persuaded by Rascoe's arguments to the extent they pertain to her mental impairment. However, this court finds that the ALJ erred in connection with his finding that her physical impairments were not severe, and that the issue should be revisited again upon remand.

### The Step Two Analysis

At step two of the disability evaluation process, "the claimant has the burden of proving, through objective medical evidence, that her impairments are severe." Teves v. McMahon, 472 F. Supp. 2d 82, 86 (D. Mass. 2007). Under the Social Security regulations, an impairment or combination of impairments is considered severe if it "significantly limit[s] [the claimant's] physical or mental ability to do basic work activities." Id. (quoting 20 C.F.R. § 404.1521(a)). However, the plaintiff's burden at this stage "is not onerous." Id. at 87. A claim may be denied at step two only if the "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered . . . ." SSR 85-28, 1985 WL 56856, at *3 (S.S.A. 1985). Accordingly, the severity requirement is nothing more than "a *de minimis* policy, designed to do no more than screen out groundless claims." McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1124 (1st Cir. 1986).

### Severity of Rascoe's Mental Impairment

The plaintiff first challenges the ALJ's conclusion that her mental impairment was not severe through her date last insured. She argues that his conclusion on this issue was erroneous and not based on substantial evidence because it was "logically inconsistent with the governing regulations." (Pl. Mot. at 4). Specifically, as the plaintiff reasons,

> in order to be severe under the regulations, an impairment must also meet the durational requirement, *i.e.*, it must be expected to last *at least 12 months*. 20 C.F.R. § 404.1509. Thus, the ALJ's finding

that Ms. Rascoe's major depressive disorder was merely medically
determinable (but not severe) as of March 31, 2009 (her date last
insured), is logically inconsistent with the governing regulations. In
other words, if, as the ALJ conceded, Plaintiff's severe major
depressive disorder resulted in a disability finding as of January 1,
2010, then, in order to have met the durational requirement for a
severe impairment, her depressive disorder, by definition, *must have
had* more than a minimal impact on her ability to perform basic
work-related activities for the prior 12 months, i.e., since, at least,
*January 1, 2009*, well before Ms. Rascoe's March 31, 2009, date last
insured.

(Id. at 4-5 (emphasis in original)).

This court finds that the plaintiff's argument reflects a misreading of the duration

requirement. Under 20 C.F.R. § 404.1509, an impairment "must have lasted *or must be*

*expected to last* for a continuous period of at least 12 months" or order to be considered

severe. (emphasis added). Therefore, under the plain language of the applicable

regulation, an onset date of January 1, 2010 does not compel the conclusion that the

claimant's impairment must have been severe since January 1, 2009. See McKay v.

Colvin, C.A. No. 13-10521-PBS, 2014 WL 2957723, at *5 (D. Mass. Jun. 30, 2014) (slip

op.) (finding that ALJ committed legal error when he concluded that plaintiff's

impairment did not meet the duration requirement of the social security regulations

because "his impairment had not lasted for 12 months" as of the date of the hearing, but

failed to consider whether plaintiff's impairment "could be expected to last for 12

months"). The plaintiff's asserted inconsistency is thus without merit.

While the record does not compel a conclusion that Rascoe's mental impairment

was severe as of January 1, 2009, or at any other time through her date last insured, this

court finds that the question of severity is ambiguous for the reasons described above. Accordingly, a final determination as to when the plaintiff's depression became severe must be decided by the ALJ upon remand, after consultation with a medical advisor. <u>See</u> <u>May v. Soc. Sec. Admin. Comm'r</u>, 125 F.3d 841, 1997 WL 616196, at *1 (1st Cir. Oct. 7, 1997) (unpub. op.) (where "evidence regarding the date on which claimant's mental impairment became severe is ambiguous[,] . . . Social Security Ruling 83-20 require[s] the ALJ to consult a medical advisor").

### Severity of Plaintiff's Physical Impairment

Rascoe also challenges the ALJ's conclusion that she did not have a severe physical impairment during the relevant time period. She contends that the ALJ's findings in this regard were contradicted by evidence in the record, which demonstrates that Rascoe's physical impairments had more than a minimal impact on her ability to perform work-related activities prior to the expiration of her insured status. (Pl. Mot. at 5). This court finds that the ALJ's decision on this issue was based on a mistaken reading of the opinion evidence. Therefore, the ALJ should address the matter again following remand for further administrative proceedings.

As described above, in connection with his finding that Rascoe's impairments were not severe, the ALJ determined that Rascoe had no medically determinable physical impairments through the date last insured. (<u>See</u> Finding #3; Tr. 14). While he recognized that she was claiming disability due to fibromyalgia and widespread pain, he found that the medical record contained "no diagnosis of chronic pain or fibromyalgia through the

date last insured," from anyone other than a mental health provider, who based the diagnosis of chronic pain on nothing more than Rascoe's subjective allegations. (Tr. 14-15). He also found that Rascoe's treatment records from the relevant time period reflected "only isolated subjective reports of pain," and that her treating and examining physicians reported normal findings, including normal strength, sensation and range of motion. (Dec. 3; Tr. 14; see also Tr. 443-46). However, the record establishes that he misread the opinion of Rascoe's treating physician, Dr. Burak Alsan.

On November 22, 2011, Dr. Alsan completed a written assessment of Rascoe's physical ability to carry out work-related activities, and determined that she had limitations in her ability to perform certain tasks. (Tr. 435-38). In particular, Dr. Alsan found that Rascoe could lift no more than 10 pounds occasionally, could only stand and/or walk for about 2 hours in an 8-hour workday, could only balance, kneel, crouch, crawl or stoop occasionally, and had some restrictions on her ability to reach. (Tr. 435-37). The ALJ considered Dr. Alsan's opinion at step two in the sequential analysis, but explained that he had given Dr. Alsan's assessment little weight with respect to the period through Rascoe's date last insured because it was completed in 2011, "and does not indicate that it is meant to pertain to through the date last insured." (Dec. 4; Tr. 15). Therefore, he concluded that the plaintiff's medical records reflected nothing more than Rascoe's subjective allegations of pain during the relevant time period, and that her claims of chronic pain and fibromyalgia did not constitute medically determinable impairments for purposes of her claim for SSDI. (Id.).

As the plaintiff argues in support of her motion to reverse, the ALJ erred when he concluded that Dr. Alsan's assessment was not meant to pertain to the period during which Rascoe was insured. (See Pl. Mot. at 3, 5). According to Dr. Alsan, his assessment was based upon his "education, training and experience" as well as his "evaluation of Ms. Rascoe including treatment of her and review of her records and history[.]" (Tr. 438). He further stated that his assessment "represents my professional opinion as to Angela Rascoe's physical limitations *from 12/1/06 to the present*." (Id. (emphasis added)). Thus, Dr. Alsan specifically included the time period in question when he rendered his opinion regarding Rascoe's physical limitations.

The Commissioner suggests that any error on the part of the ALJ was harmless because Dr. Alsan's assessment was consistent with an ability to perform sedentary work rather than with a finding of total disability. (Def. Mem. at 9). However, Dr. Alsan indicated in his assessment that Rascoe lacked the ability to perform the full range of sedentary work. Under the regulations, such work is defined as that which

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567. Although Dr. Alsan determined that Rascoe maintained the capacity to lift 10 pounds occasionally, and stand and/or walk for at least 2 hours in an 8-hour workday, he also opined that the plaintiff had limitations on her ability to perform

various postural activities, as well as limitations on her ability to reach. (Tr. 435-37). It is not clear how these limitations may have impacted the ALJ's analysis if he had credited Dr. Alsan's opinion.

The Commissioner argues that Dr. Alsan did not begin to treat the plaintiff until April 2010, approximately a year after the expiration of her insured status. (Def. Mem. at 9). She further points out that Dr. Alsan failed to identify any evidence from the relevant time period to support his assessment of Rascoe's limitations through the date last insured. (Id.). As described above, however, Dr. Alsan specifically stated that he had reviewed Rascoe's medical records and history, in addition to treating and evaluating her, and that his assessment reflected his professional opinion of her limitations dating back to December 1, 2006. (Tr. 438). It should be left to the ALJ upon remand to determine how to weigh Dr. Alsan's opinion as it pertains to the time period through Rascoe's date last insured.

Finally, the Commissioner argues that the available records through the date last insured "simply do not document the existence of any long term, medically significant, physical or mental limitations." (Def. Mem. at 9). However, in order to establish severity, the plaintiff need only show that her impairment or combination of impairments amounts to more than a "slight abnormality" and has more than "a minimal effect" on her ability to perform work. McDonald, 795 F.2d at 1124 (internal quotations omitted). Given the limited burden on the plaintiff at step two, the ALJ's misreading of Dr. Alsan's opinion, and this court's conclusion that the matter must be remanded for purposes of

complying with SSR 83-20, this court finds that the issue of severity of both Rascoe's

mental and physical impairments should be revisited by the ALJ.

### IV.  CONCLUSION

For all the reasons detailed herein, the "Defendant's Motion for Order Affirming

the Decision of the Commissioner" (Docket No. 28) is DENIED and the plaintiff's

"Motion to Reverse" (Docket No. 24) is ALLOWED.  The matter will be remanded to the

Commissioner for further proceedings consistent with this Memorandum of Decision and

Order.


　　／ s / Judith Gail Dein　　　　　　
Judith Gail Dein
U.S. Magistrate Judge